UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| TABITHA GENTRY, ) | |
| VINCENT MINTON, ) | |
| MICHAEL HERRON, ) | |
| ADAM WALKER, ) | |
| BRIAN BURGESS, ) | 4:14-cv-00054-RLY-TAB |
| ANNA CHASTAIN, and ) | |
| JANELLE SOUTH, on their own behalf ) | |
| and on behalf of those similarly situated, ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| FLOYD COUNTY, INDIANA, ) | |
| DARRELL MILLS, Individually and in ) | |
| his capacity as Floyd County Sheriff, ) | |
| TIFFANY FRANS, Individually, ) | |
| OFFICER ATHERTON, Individually, ) | |
| RYAN RAINEY, Individually, and ) | |
| OFFICERS JOHN/JANE DOE, ) | |
| Individually, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON PLAINTIFFS' MOTION TO CERTIFY CLASS**

Plaintiffs, Tabitha Gentry, Vincent Minton, Michael Herron, Adam Walker, Brian Burgess, Anna Chastain, and Janelle South, are a group of detainees who were housed in padded isolation cells of the Floyd County Jail in conditions they claim were unconstitutional. Before the court is Plaintiffs' Motion for Class Certification. For the reasons that follow, Plaintiffs' Motion for Class Certification is **GRANTED**.

1

I.     **Background**

In 2010, the Floyd County Sheriff's Department issued a policy statement entitled "Combative Subjects Practices." (Filing No. 49-3, Combative Subjects Policy). As the name of the Policy suggests, the Policy covers the best practices for Floyd County Jail Personnel to deal with "combative and potentially suicidal subjects" entering the Jail. (*Id.*). The Policy leaves the determination of who falls within the Policy to the discretion of Jail Personnel, and grants them the authority to take unruly detainees to a padded cell, strip them of their clothes, and replace their clothes with a "protective smock." (*Id.*). In determining whether a subject is unruly, the Policy instructs staff to use a "temperature test":

> Supervisors or medical staff that deem a subject unstable by means of intoxications [sic], general threating [sic] behavior, have the ability to take each incident and conduct a "temperature" test to decided [sic] what the best course of action is to protect all parties. This "temperature" test to decided [sic] what the best course of action is to protect all parties. This "temperature" test includes the subject's demeanor, attitude, actions, intoxication, and a number of other officer observations that would allow him to make this determination.

(*Id.*).

Subjects who fail the temperature test are placed into one of two padded isolation cells, referred to as "PD-1" and "PD-2." (Filing No. 44-1, Deposition of Lt. Andrew Sands[1] at 90-92). These cells consist of four walls; there is no bench on which to sit. (*See* Filing No. 52, Plaintiffs' Ex. 5 (videotape of Plaintiffs in one of the cells)). Once

---

[1] The deposition of Lt. Sands is uploaded on the docket at Filing Nos. 44-1 and -2. Hereinafter, his deposition will be cited as "Sands Dep. at [page no.]."

2

inside a padded cell, detainees are stripped of their clothing (sometimes forcibly) and given a one-size-fits-all protective (i.e., suicide prevention) smock. In addition, they are deprived of mattresses, blankets, and personal hygiene products because, according to Lt. Andrew Sands, such items can be used as weapons. (Sands Dep. at 125-29; *see also id.* at 230 ("Q: So anytime someone refuses orders, you view them as a threat to use their clothing as a weapon against officers? A: Among other reasons, yes.")). Detainees remain in the padded cell until Jail Personnel determine, in their judgment, that the detainees will behave. (*Id.* at 103-04 (testifying that "if an inmate was a behavioral problem, we may tell them, "Okay. Let's reevaluate this in a couple hours [until] you can prove to us that you're going to follow our rules and be respectful . . . .")).

The Plaintiffs herein were not placed in a padded cell because of a risk of suicide. Instead, Plaintiffs were placed (sometimes forcibly carried) in a padded cell because they failed the temperature test by engaging in bad behavior during the booking process, such as engaging in verbal arguments with Jail Personnel. (*See*, *e.g*., Filing No. 1, Compl. ¶ 47). In addition to being stripped of their clothing, Plaintiffs allege they were treated without dignity or respect. Some had to urinate in a floor drain (*Id.* ¶¶ 62, 75, 84, 106, 122, 136); some were denied their medications (*id.* ¶¶ 110, 132); some were pepper sprayed (*id.* ¶¶ 56, 115); and some were hit with a taser (*id.* ¶¶ 72, 101).

Plaintiffs allege that the Jail's Policy and unwritten practice of "stripping out"[2] unruly subjects violates the Fourth Amendment's right to privacy and prohibition against

---

[2] Sgt. Ryan Rainey testified that the term "stripping out" is "just a short form of saying they went to a padded cell." (Filing No. 46, Deposition of Ryan Rainey at 26).

excessive force; the Eighth Amendment's prohibition against cruel and unusual punishment; and the Fourteenth Amendment's right to substantive and procedural due process. Plaintiffs seek to certify the following class for liability issues only pursuant to Rule 23(c)(4):

> All inmates confined from June 12, 2013 to present in the Floyd County Jail who were not on a suicide watch, but were housed in a padded cell where they were deprived of clothing, bedding, and hygiene products.

In addition, Plaintiff's propose the following subclass:

> Those class members who were subjected to weapons deployment while confined and secured in the padded cells.

## II. Rule 23 Requirements

Class action suits are governed by Federal Rule of Civil Procedure 23. A party seeking class certification bears the burden of establishing that certification is appropriate. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). The decision whether to grant or deny a motion for class certification lies within the broad discretion of the trial court. *Id*.

Rule 23 prescribes a two-step analysis to determine whether class certification is appropriate. First, a plaintiff must satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Clark v. Experian Info. Sols., Inc.*, 256 Fed. Appx. 818, 821 (7th Cir. 2007); *Williams v. Chartwell Fin. Serv., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000). The failure to meet any one of these requirements precludes certification of a class. *Retired Chicago Police Ass'n*, 7 F.3d at 596. Second, the action must also satisfy one of the conditions of Rule 23(b). *Clark*, 256

Fed. Appx. at 821; *Williams*, 204 F.3d at 760. Plaintiffs seek certification under Rule 23(b)(3), which permits class certification if "questions of law or fact common to class members predominate over any questions affecting only individual members" and class resolution is "superior to other available methods for failure and efficiently adjudicating the controversy."

Defendants oppose Plaintiffs' motion on several grounds. First, Defendants argue the class is not readily identifiable because determining whether one is a member of the class requires an individualized factual inquiry. Second, Defendants argue Plaintiffs cannot establish any of the factors listed in Rule 23(a) or (b). The court will address each of these arguments in turn below.

### A. Identifiable Class

Before reaching the Rule 23 requirements, the court must first determine whether "the class is indeed identifiable." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). A class is identifiable if class membership can be readily obtained by reference to objective criteria. *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 496 (7th Cir. 2012). If class membership can only be determined by individualized fact-finding or "mini-trials," then a class action is inappropriate. *In re Skelaxin (Metaxalone) Antitrust Lit.*, 299 F.R.D. 555, 567 (E.D. Tenn. 2014); *see also Bledsoe v. Combs*, No. NA 99-153-C H/G, 2000 WL 681094, at *4 (S.D. Ind. March 14, 2000) (finding proposed class action unmanageable where court could not determine whether one was a member of the class "without hearing evidence on what would amount to the merits of each person's claim"). Defendants argue the class is not readily identifiable because class membership

5

depends on whether each class member was (1) not on suicide watch and (2) housed in a padded cell where he/she was deprived of bedding, clothing, and hygiene products. Thus, a class member who was housed in a padded cell but received bedding would not be a member of the class.

As Plaintiffs note, the Behavior Watch Forms maintained by the Jail for those taken to the padded cells clearly indicate who was on suicide watch and who was on "behavior watch." (*See* Filing Nos. 49-5, 49-8, 49-10, 49-11). Plaintiffs were not on suicide watch during their time in the padded cells. (Sands Dep. at 270-80). Furthermore, Lt. Sands testified that those inmates who were stripped of their clothing were never given bedding and hygiene products as a matter of course. (*Id*. at 125 ("Q: Do the inmates there being held naked except for a smock receive any mattress or bedding of any type? A: No.")). Class members are determined simply from their presence in the cell for reasons other than suicide prevention. The court therefore finds the class is sufficiently definite to permit class certification.

**B.     Rule 23(a) Factors**

**1.     Numerosity**

To meet the numerosity requirement, the class must be so large "that joinder of all members is impracticable." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (citing Fed. R. Civ. P. 23(a)). "Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met." *Morris v. Risk Mgmt. Alts., Inc*., 203 F.R.D. 336, 342 (N.D. Ill. 2001).

Plaintiffs represent that they have identified 162 inmates, in addition to class representatives, who were deprived of their clothing, bedding, and hygiene products while held in the padded cells for "behavioral reasons." (Sands Dep. at 279-80 and Dep. Ex. 26). In addition, Plaintiffs received 25 additional Behavioral Watch Forms from Defendants since Lt. Sands' deposition. Although Plaintiffs' proposed class easily exceeds 40, Defendants argue the Plaintiffs failed to establish that joinder of the 162-plus inmates would be impracticable. The court is not persuaded; the sheer number of potential class members leads the court to conclude that joinder would be impracticable.

As for the subclass of inmates subjected to weapons deployment, Defendants argue Plaintiffs have offered no evidence to prove that a subclass is necessary. Plaintiffs represent that over 25 inmates have been identified as having been pepper sprayed while confined in one of the two padded cells. (*See* Filing No. 66-1, sampling of four Incident Reports). As discovery continues, Plaintiffs believe additional members of the subclass will be found.

Although numerosity is an important consideration in the Rule 23 analysis, the court may look to other factors when determining whether joinder is impracticable, including, *inter alia*: judicial economy arising from the avoidance of a multiplicity of lawsuits, the financial resources of the class members, the inconvenience of trying individual suits, the size of each plaintiff's claim, and factors relevant to the practicability of joining all class members. *Donovan v. St. Joseph Co. Sheriff*, No. 3:11-cv-133-TLS, 2012 U.S. Dist. Lexis 63847, at *6-7 (N.D. Ind. May 3, 2012) (citing 32B Am. Jur. 2d Federal Courts § 1608; 5 Moore's Fed. Practice – Civil § 23.22[1][a] (3d ed. 2011)).

These factors persuade the court that joinder of the 25-plus claims in the subclass would be impracticable. *See, e.g., EEOC v. Printing Indus. of Metro. Wash., D.C., Inc.*, 92 F.R.D. 51, 53 (D.C. Cir. 1981) ("[A]s few as 25-30 class members should raise a presumption that joinder would be impracticable, and thus the class should be certified."). From the court's standpoint, resolving the subclass members' claims on an individual basis would strain the court's resources. Furthermore, the class members are generally disadvantaged financially and thus, do not have the means to prosecute individual lawsuits. And finally, damages are limited; consequently, there would be little incentive to file individual claims. For these reasons, the court finds the subclass meets the numerosity requirement.

### 2. Commonality

To meet the commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(b). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). A common nucleus of operative fact exists where "defendants have engaged in standardized conduct towards members of the proposed class." *Id*. In *Wal-Mart v. Dukes*, the Supreme Court explained:

> [The plaintiffs'] claims must depend upon a common contention – for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke.

8

131 S.Ct. 2541, 2551 (2011).

Plaintiffs liken their case to *Flood v. Dominguez*, 270 F.R.D. 413 (N.D. Ind. 2010). There, the plaintiffs challenged the Lake County Jail's policy and practice of holding pretrial detainees who were just booked into the Jail in holding cells for more than 24 hours as violative of the Due Process Clause of the Fourteenth Amendment. *Id.* at 415. The purpose of the holding cells was to detain arrestees while the Jail determined where they would be housed. *Id.* Each cell had a concrete floor, concrete benches around the perimeter, and a single toilet, but no mattress or bed. *Id.*

Plaintiffs sought to certify a class of detainees housed in the holding cells for more than 24 hours. *Id.* In granting the motion, the district court found the Plaintiffs established the commonality requirement. *Id.* at 418. It reasoned: "Plaintiffs' core complaint—that the Jail's policy of keeping detainees in holding cells for over 24 hours without a mattress or bed is unconstitutional—is common to the entire class." *Id.* The court rejected the defendant's argument that the potential variation in damages defeated commonality. "[T]he Seventh Circuit has been clear that variations in damages will not defeat class certification." *Id.* (citing *Arreola v. Godinez*, 546 F.3d 788, 800-01 (7th Cir. 2008)).

Plaintiffs argue *Flood* is directly on point because "this case is marked by common constitutional violations caused by institution-wide practices officially condoned by the jail administration." (Filing No. 56, Plaintiffs' Memorandum at 40). Defendants distinguish *Flood* because, unlike the policy or practice in *Flood*, "this case is all about individual circumstances." To drive their point home, Defendants rely upon

9

*Secreti v. PTS of Am., LLC*, No. 3-13-1065, 2015 WL 3505146 (M.D. Tenn. June 3, 2015). The complaint in *Secreti* alleged PTS of America used excessive force against the plaintiff and other similarly situated inmates by placing them in full restraints for more than 48 continuous hours. *Id.* at *1. The plaintiff also asserted PTS failed to provide private or adequate access to toilet facilities, failed to provide personal hygiene items, failed to provide proper food and drink, deprived him of access to prescribed medication and medical staff, and deprived him of adequate sleep and exercise during transport, in violation of the plaintiff's and the class's Fourth, Eighth, and Fourteenth Amendment rights. *Id*. The plaintiff moved for class certification, defining the class as follows:

> [A]ll inmates including, without limitation, adults and juveniles, males and females, pretrial detainees, sentenced prisoners, state mental hospital inmates, and immigration detainees who were transported by PTS of America, LLC and/or its agents or employees on behalf of local or state governments, or the federal government, since September 30, 2012 restrained for more than 48 continuous hours.

*Id.*

In analyzing plaintiff's claim the district court observed, "Before the Court can determine whether a class member's constitutional rights have been violated by such a policy, practice or custom, it must balance any alleged policy, custom or practice of Defendant against legitimate penological justification for such policy and must uphold any such policy if it is reasonably related to legitimate penological interests." *Id*. at *3 (citing *Florence v. Bd. of Chosen Freeholders*, 132 S.Ct. 1510, 1515 (2012)). Applying the *Florence* balancing test to the plaintiff's proposed class, the court denied the plaintiff's motion. Specifically with regard to the commonality requirement, the court

10

found that the balance of interests would differ based on the status of the inmates—*i.e.*, the difference between a pre-trial detainee and a convicted prisoner—and would require the court to balance the interests as to each individual and not the class as a whole. *Id*. The court further found that the defendant could also assert different defenses as to each inmate, based upon the inmate's particular circumstances. *Id*. Accordingly, because the court could not resolve the issue central to the validity of each one of the class claims in one stroke, the court found the plaintiff failed to satisfy the commonality requirement of Rule 23. *Id*. at *4.

Defendants argue Plaintiffs cannot establish commonality for the same reasons the plaintiff in *Secreti* could not establish commonality. They explain: "The balancing nature of the inquiry of whether the Defendants' actions served a legitimate penological interest would depend on the facts and circumstances of each Plaintiffs' interaction with the Defendants' officers." (Filing No. 61, Defendants' Response at 44). They further point out the proposed class contains both pre-trial detainees and convicted prisoners. They maintain this difference in inmate status is enough to defeat the commonality requirement.

The court finds Plaintiffs' case is more akin to *Flood* than *Secreti*. Plaintiffs do not challenge the *reasons* for their placement in a padded cell. Rather, they challenge the *conditions* of their confinement in the padded cell—no clothing (but a smock), no bedding or hygiene products—as punitive and out of balance with any legitimate penological interest. *See Bell v. Wolfish*, 441 U.S. 520, 537 (1979) ("[P]unitive measures . . . may not constitutionally be imposed prior to a determination of guilt."). This inquiry

11

does not depend on any individualized determination. In sum, Plaintiffs' core complaint—where Defendants' "stripped out" policy or practice is unconstitutionally punitive—is common to the entire class. *Blihovde v. St. Croix Co., Wis.*, 219 F.R.D. 607, 616 (W.D. Wis. 2003) ("[A] single common issue is sufficient to satisfy [the commonality] requirement.").

The court further finds that the proposed class may consist of both pre-trial detainees and convicted prisoners. Although conditions of confinement claims are brought under the Fourteenth Amendment's Due Process Clause, and convicted prisoner's claims are brought under the Eighth Amendment's Cruel and Unusual Punishment Clause, the Seventh Circuit "appl[ies] the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'" *Board v. Farnham, Jr.*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 n.2 (7th Cir. 1999)); *see also Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009) ("[A]nything that would violate the Eighth Amendment would also violate the Fourteenth Amendment."). Thus, the fact that the class contains both pre-trial detainees and convicted prisoners is not an impediment to certification, as each member of the putative class will have to prove the same facts and the same legal theories to prevail on his or her claim. Furthermore, Plaintiffs seek certification for liability purposes only, leaving the class members' individual damages determination for another day. *Flood*, 270 F.R.D. at 418 ("Each class member must prove that the Jail's policies and widespread practices caused the unconstitutional

conditions of confinement in the holding cells." (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978))).

### 3. Typicality

The next issue concerns whether the claims of the class representative are typical of the class as a whole. *See* Fed. R. Civ. P. 23(a)(3). A claim is typical of the class if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d at 595 (citation and internal quotation omitted). Typicality and commonality are closely related; typicality, however, focuses on the relationship between the class representative and the class as a whole. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Typicality is important because the class representative, in pursuing his or her own claims, is also advancing the interests of the class. *In re General Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 312 (7th Cir. 2007).

Defendants argue the Plaintiffs' claims are not typical of the class because each claim depends upon the individualized interaction each plaintiff or proposed class member had with Jail Personnel. In other words, they argue, Plaintiffs' pursuit of their own individual claims will not advance the interests of the proposed class. The court does not agree. "[S]imilarity in legal theory may control even in the face of differences of fact." *Id*. Here, Plaintiffs challenge the same jail policy and practice and will rely on the same legal theories to prove their claim as the proposed class. Plaintiffs have met the typicality requirement.

13

### 4. Adequacy of Representation

The final requirement of Rule 23 is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To be an adequate representative of a class, a plaintiff (1) must have a sufficient stake in the outcome to ensure zealous advocacy; (2) must not have antagonistic or conflicting claims with other class members; and (3) must have counsel who are experienced, qualified, and generally able to conduct the litigation. *Harris v. Circuit City Stores, Inc.*, No. 2008 WL 400862, at *7 (N.D. Ill. 2008) (citing *Retired Chicago Police Ass'n*, 7 F.3d at 594).

Defendants do not challenge the qualification of Plaintiffs' counsel. Instead, they argue there is the potential for conflicts among the Plaintiffs proposed as class representatives. They cite as an example class representative Adam Walker, who, according to the Complaint, was tased seven times. (Compl. ¶ 101). They argue: "Walker's presentation of that claim, among other claims, could make the pursuit of all elements of his claim antagonistic to the claim of the inmate who spent two hours in the padded cell." (Defendants' Response at 51). The court fails to see the conflict here. Walker's damages may be more, but both Walker and the class member would be subject to the same "stripped out" policy.

### C. Rule 23(b) Factors

In addition to meeting the class certification requirements under Rule 23(a), Plaintiffs' proposed class must also satisfy the requirements of one of the three subsections of Rule 23(b). Here, Plaintiffs propose that certification is appropriate under

Rule 23(b)(3), which requires that: (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

Under the predominance requirement of Rule 23(b)(3), common questions of law or fact must predominate; in other words, "there must be a common nucleus of operative facts applicable to the entire class." *Ziemack v. Centel Corp.*, 163 F.R.D. 530, 535-36 (N.D. Ill. 1995).

Defendants argue the issues in this case are too individualized and fact-sensitive to allow class certification, particularly where, as here, multiple Defendants are sued in their individual and official capacities. Plaintiffs reiterate that they seek certification on the issue of liability— *i.e.*, whether Defendants' "stripped out" policy or practice violates the Plaintiffs' constitutional rights by depriving them of basic human necessities. Thus, the issues of concern to Defendants, such as individual damages and the defense of qualified immunity, will be considered (assuming liability is found) in separate and individualized proceedings.

The court agrees with the Plaintiffs. "'Courts routinely address conditions of confinement claims in class actions.'" *Flood*, 270 F.R.D. at 420 (quoting *Dunn v. City of Chicago*, 231 F.R.D. 367, 377 (N.D. Ill. 2005)). This is especially true where, as here, the conditions stem from jail policies or practices that are uniformly applied to all inmates. *Id*. The court therefore finds that, notwithstanding any individual damages

determinations, the constitutionality of the Defendants' "stripped out" policy and practice will be the predominate factor in determining liability. *Flood v. Dominguez*, No. 2:08 CV 153 PPS PRC, 2011 WL 238265, at *3 (N.D. Ind. Jan. 21, 2011) (certifying the class despite individualized nature of the injuries).

### 2. Superiority

Under Rule 23(b)(3), a class action must also be superior to other available methods for the fair and efficient adjudication of the controversy. Considerations relevant to the superiority of a class action over individual lawsuits include:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Defendants argue a class action lacks practical utility because the court will have to conduct separate hearings to determine each class member's damages. The court is not persuaded by this argument. Because common issues do predominate, resolution of those common claims is more efficient than multiple individual actions dealing with those claims. Also, because many potential class members would likely recover little damages, they are unlikely to prosecute individual claims absent the cost-sharing efficiencies offered by a class action. The court therefore finds that a class action is a superior method of litigating this case.

### III. Conclusion

The court finds the proposed class meets the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3). Therefore, Plaintiffs' Motion for Class Certification (Filing No. 49) is **GRANTED**.

**SO ORDERED** this 16th day of February 2016.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.