UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| TABITHA GENTRY, | ) | |
| VINCENT MINTON, | ) | |
| MICHAEL HERRON, | ) | |
| ADAM WALKER, | ) | |
| ANNA CHASTAIN, and | ) | 4:14-cv-00054-RLY-TAB |
| JANELLE SOUTH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FLOYD COUNTY, INDIANA, | ) | |
| DARRELL MILLS, | ) | |
| TIFFANY FRANS, | ) | |
| OFFICER ATHERTON, | ) | |
| RYAN RAINEY, and | ) | |
| JOHN/JANE DOE, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION FOR RECONSIDERATION OF
COURT'S ENTRY ON PLAINTIFF'S MOTION TO CERTIFY CLASS**

On February 16, 2016, the court granted the Plaintiffs' Motion to Certify Class. Defendants move the court to reconsider its ruling and deny the Plaintiffs' motion because, they argue, the Plaintiffs do not meet the requirements of Rule 23(a) or (b). For the reasons set forth below, the court **GRANTS in part and DENIES in part** Defendants' motion.

**I.      Background**

In this action, Plaintiffs challenge the Floyd County Sheriff's Department policy entitled "Combative Subjects Practices."   (Filing No. 49-3, Combative Subjects Policy).

1

As its name suggests, the Policy covers the best practices for Floyd County Jail Personnel to deal with "combative and potentially suicidal subjects" entering the Jail. (*Id*.). The Policy leaves the determination of who falls within the Policy to the discretion of Jail Personnel, and grants them the authority to take unruly detainees to a padded cell, strip them of their clothes, and clothe them in a "protective smock." (*Id*.). In determining whether a subject is unruly, the Policy instructs staff to use a "temperature test":

> Supervisors or medical staff that deem a subject unstable by means of intoxications [sic], general threating [sic] behavior, have the ability to take each incident and conduct a "temperature" test to decided [sic] what the best course of action is to protect all parties. This "temperature" test to decided [sic] what the best course of action is to protect all parties. This "temperature" test includes the subject's demeanor, attitude, actions, intoxication, and a number of other officer observations that would allow him to make this determination.

(*Id*.).

Subjects who fail the temperature test are placed into one of two padded isolation cells, referred to as "PD-1" and "PD-2." (Filing No. 44-1, Deposition of Lt. Andrew Sands at 90-92). These cells consist of four walls; there is no bench on which to sit. (*See* Filing No. 52, Plaintiffs' Ex. 5 (videotape of Plaintiffs in one of the cells)). Once inside a padded cell, detainees are stripped of their clothing and given a one-size-fits-all protective (i.e., suicide prevention) smock. In addition, they are deprived of mattresses, blankets, and personal hygiene products because, according to Lt. Andrew Sands, such items can be used as weapons. (Sands Dep. at 125-29; *see also id.* at 230 ("Q: So anytime someone refuses orders, you view them as a threat to use their clothing as a weapon against officers? A: Among other reasons, yes."); *id.* at 127 ("Q: Are the

inmates that are being held naked in padded cells except for a smock provided with a blanket?  A:  No, they are not."); *id.* at 128 ("Q: Are the inmates that are being held in the padded cells naked except for a smock provided with a hygiene pack?  A: They are not.")).  Detainees remain in the padded cell until Jail Personnel determine, in their judgment, the detainees will behave.  (*Id*. at 103-04 (testifying that "if an inmate was a behavioral problem, we may tell them, "'Okay.  Let's reevaluate this in a couple hours [until] you can prove to us that you're going to follow our rules and be respectful . . . .'")).

The Plaintiffs herein were placed in the padded cell because they failed the temperature test by engaging in bad behavior with Jail Personnel during the booking process.  (*See*, *e.g*., Filing No. 17, Am. Compl. ¶ 49).  In addition to being stripped of their clothing, Plaintiffs allege they were treated without dignity or respect.  Some had to urinate in a floor drain (*Id*. ¶¶ 62, 75, 84, 106, 122, 136); some were denied their medications (*id.* ¶¶ 110, 132); some were pepper sprayed (*id.* ¶¶ 56, 115); and some were hit with a taser (*id.* ¶¶ 72, 101).  Plaintiffs allege the Jail's Policy and/or unwritten practice of "stripping out"[1] unruly subjects violates the Fourth Amendment's right to privacy and prohibition against excessive force; the Eighth Amendment's prohibition against cruel and unusual punishment; and the Fourteenth Amendment's right to substantive and procedural due process.

---

[1] Sgt. Ryan Rainey testified that the term "stripping out" is "just a short form of saying they went to a padded cell."  (Filing No. 46, Deposition of Ryan Rainey at 26).

3

After considering the facts, issues, and the applicable law, the court granted Plaintiffs' request to certify the following class for liability issues only pursuant to Rule 23(c)(4):

> All inmates confined from June 12, 2013 to present in the Floyd County Jail who were not on a suicide watch, but were housed in a padded cell where they were deprived of clothing, bedding, and hygiene products.

In addition, the court granted Plaintiff's request to certify the following subclass:

> Those class members who were subjected to weapons deployment while confined and secured in the padded cells.

Defendants' motion to reconsider followed.

## II.    Discussion

The court has the inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment. *Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145, 149 (S.D. Ind. 1993). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (internal quotation marks and citation omitted). A motion to reconsider is appropriate when "'the Court has patently misunderstood a party, or has made a decision outside of the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). Whether to grant a motion to reconsider is

committed to the sound discretion of the district court. *Caisse Nationale*, 90 F.3d at 1270.

Defendants raise a number of arguments in support of reconsideration. The court will begin with whether the class is identifiable.

### A.   Identifiable Class

The definition of the main class requires a class member to be: (1) not on suicide watch; (2) housed in a padded cell; (3) deprived of bedding; (4) deprived of clothing; and (5) deprived of hygiene products. According to Defendants, class members cannot be determined based simply on their presence in the padded cell because potential factual disputes exist regarding the last two class requirements—that class members be deprived of clothing and deprived of hygiene products. Therefore, Defendants argue, the court erred in finding the main class identifiable.

Citing the testimony of Lt. Sands, the court found that those unruly inmates who were stripped of their clothing and provided a jail-issued smock were never given bedding and hygiene products as a matter of course. Defendants admit this fact in their Response to Plaintiffs' Motion for Class Certification. (Filing No. 66, Defendants' Response at 34 ("Blankets, mattresses and hygiene items are not provided to inmates who have been so combative or resistant with the staff that they are placed in the padded cell because it would give the inmate something to use on the officers or themselves.")). Defendants assert, however, that inmates were not deprived of hygiene products because, as Lt. Sands testified, if an inmate needed a hygiene item to shower or brush his or her

5

teeth, Jail Personnel would provide the hygiene item and require it be returned after use. (Sands Dep. at 129).

The withdrawal of hygiene products as a disciplinary measure can constitute a constitutional violation. *See, e.g., Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) (confinement without adequate access to life's necessities, including hygiene items, can violate the Eighth Amendment). Here, inmates subject to the Jail's stripping out policy were not issued hygiene items in the isolation cell. Whether an inmate later received hygiene items is not at issue and goes only to damages, not liability. *See Pella Corp. v Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) (a district court may "certif[y] a class for liability alone where damages or causation may require individualized assessments").

Defendants also identify a factual issue over whether the smock is the functional equivalent of "clothing." The key issue of fact—i.e., that class members were forcibly stripped—is undisputed. Just as with hygiene products, that some members suffered the indignity of having their naked bodies exposed for a short period of time goes to the issue of damages, not liability. Accordingly, the court finds it did not err in finding the class sufficiently identifiable.

### B.     The Main Class

Next, Defendants argue that the court erred in finding the Plaintiffs satisfied the commonality and predominance requirements of Rule 23(a)(2) and Rule 23(b)(3) respectively.

### 1. Commonality

To meet the commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). A common nucleus of operative fact exists where "defendants have engaged in standardized conduct towards members of the proposed class." *Id.* In *Wal-Mart v. Dukes*, the Supreme Court explained:

> [The plaintiffs'] claims must depend upon a common contention – for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke.

564 U.S. 338, 350 (2011).

In *Flood v. Dominguez*, 270 F.R.D. 413 (N.D. Ind. 2010), the district court certified a class of detainees housed in holding cells for more than 24 hours without a bed or mattress. The commonality requirement was satisfied, the *Flood* court reasoned, because "Plaintiffs' core complaint—that the Jail's policy of keeping detainees in holding cells for over 24 hours without a mattress or bed is unconstitutional—is common to the entire class." *Id.* at 418. In the present case, the court analogized Plaintiffs' proposed class to the class certified in *Flood*, and concluded:

> Plaintiffs do not challenge the *reasons* for their placement in a padded cell. Rather, they challenge the *conditions* of their confinement in the padded cell—no clothing (but a smock), no bedding or hygiene products—as punitive and out of balance with any legitimate penological interest. This

7

>inquiry does not depend on any individualized determination. In sum, Plaintiffs' core complaint—whether Defendants' "stripped out" policy or practice is unconstitutionally punitive—is common to the entire class.

(Filing No. 75, Entry on Plaintiffs' Motion for Class Certification at 11-12) (internal citations omitted).

Defendants assert that certification is inappropriate because, unlike the inmates in *Flood*, not every inmate in the Jail is subjected to the stripped out policy. Defendants are correct; not every inmate is subjected to the stripped out policy and placed in isolation. But that fact does not preclude certification, because those that are subject to the policy suffer the same consequences—detainment in an isolation cell with no clothing (but a smock), no bedding, and no hygiene products. *See, e.g., Gillis*, 468 F.3d at 493 ("A lack of heat, clothing, or sanitation can violate the Eighth Amendment."); *Maxwell v. Mason*, 668 F.2d 361, 365 (8th Cir. 1981) (confinement in isolation without adequate clothing or bedding supports an Eighth Amendment claim: "clothing is a 'basic necessity of human existence'"); *Bell v. Wolfish*, 441 U.S. 520, 537 (1979) ("[P]unitive measures . . . may not constitutionally be imposed prior to a determination of guilt."). The conditions of confinement in the isolation cell, therefore, apply equally to the entire class. *See Flood v. Dominguez*, No. 2:08-cv-153 PPS PRC, 2011 U.S. Dist. LEXIS 6754, at *9 (N.D. Ind. Jan. 21, 2011) (explaining on reconsideration that certification was appropriate because the "alleged conditions common to all detainees—the lack of bedding, cold temperatures, lack of hygiene items, lack of exercise, small meal portions—were the result of the Jail's uniform policies and practices and were applied to all detainees at the Jail"); *Dunn v. City of Chicago*, 231 F.R.D. 367, 377 (N.D. Ill. 2005) (finding courts "routinely address

conditions of confinement claims in class actions" where the conditions of confinement "common to all . . . are unlawful").

### 2.     Predominance

Under the predominance requirement of Rule 23(b)(3), common questions of law or fact must predominate; in other words, "there must be a common nucleus of operative facts applicable to the entire class." *Ziemack v. Centel Corp.*, 163 F.R.D. 530, 535-36 (N.D. Ill. 1995). Defendants argue the issues in this case are too individualized and fact-sensitive to allow class certification, particularly where, as here, multiple Defendants are sued in their individual and official capacities.

The certification issue here focuses on Plaintiffs' *Monell* claim that Floyd County's "stripping out" policy and unwritten practice is unconstitutional, and not on any individual capacity claims. "When a class challenges a uniform policy or practice, the validity of that policy or practice tends to be the predominant issue in the ensuing litigation." *Young v. County of Cook*, No. 06 C 552, 2007 WL 1238920, at *7 (N.D. Ill. Apr. 25, 2007). This is especially true where, as here, the conditions stem from jail policies or practices that are uniformly applied to all inmates. *Flood*, 270 F.R.D. at 420. Accordingly, the court finds it did not err in concluding Plaintiffs satisfied the commonality and predominance requirements of Rule 23. Having so found, the court reiterates its stance that a class action is superior to prosecuting individual claims. Defendants' motion to reconsider certification of the main class is therefore **DENIED**.

C.  **The Subclass**

Defendants also argue that certification of the subclass was erroneous because the Plaintiffs have only identified 20 potential subclass members.

To meet the numerosity requirement, the class must be so large "that joinder of all members is impracticable." *Keele*, 149 F.3d at 594. Although there is not a numerical threshold to establish numerosity, 40 is generally considered sufficiently large to satisfy Rule 23(a). *See Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 & n.9 (7th Cir. 1969) (even 40 class members "is a sufficiently large group to satisfy Rule 23(a)"). When determining whether joinder is impracticable, the court may also consider other factors including, *inter alia*, judicial economy arising from the avoidance of a multiplicity of lawsuits, the financial resources of the class members, the inconvenience of trying individual suits, the size of each plaintiff's claim, and factors relevant to the practicability of joining all class members. *Donovan v. St. Joseph Co. Sheriff*, No. 3:11-cv-133-TLS, 2012 U.S. Dist. Lexis 63847, at *6-7 (N.D. Ind. May 3, 2012) (citing 32B Am. Jur. 2d Federal Courts § 1608; 5 Moore's Fed. Practice – Civil § 23.22[1][a] (3d ed. 2011)).

At the time the court initially ruled on Plaintiffs' motion, the court was under the impression that there were over 25 inmates that fit within the subclass. The court was mistaken; Plaintiffs reported then that the potential class was actually estimated to be "over 20." As of their Response to the present motion, Plaintiffs have not identified any additional potential members. Twenty or so class members is simply not enough to satisfy the numerosity requirement. *See Arreola v. Godinez*, 546 F.3d 788, 798 (2008) ("We can assume 14 would not be enough . . . ."); *Oplchenski v. Parfums Givenchy, Inc.*,

10

254 F.R.D. 489, 495 (N.D. Ill. 2008) ("Generally, where class members number at least 40, joinder is considered impracticable and numerosity is satisfied."); *Ansari v. N.Y. Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998) (numerosity satisfied when the class comprises 40 or more members and . . . not . . . satisfied when the class comprises 21 or fewer"). Furthermore, the court finds that joinder would not be impracticable, even considering the additional factors such as the inconvenience of trying individual excessive force cases, given the size of the putative class members. The court therefore reconsiders its prior ruling and **GRANTS** Defendants' motion to reconsider certification of the subclass.[2]

### III. Conclusion

The court finds it did not err with respect to the certification of the main class, but did err with respect to certification of the subclass. Therefore, the court **GRANTS in part and DENIES in part** Defendants' Motion for Reconsideration of Court's Entry on Plaintiffs' Motion to Certify Class (Filing No. 78).

**SO ORDERED** this 25th day of July 2016.

								_____
								RICHARD L. YOUNG, CHIEF JUDGE
								United States District Court
								Southern District of Indiana

---

[2] Defendants also argue that the subclass pertains to issues regarding the use of force which necessarily requires consideration of individualized circumstances. Because the issue of numerosity is dispositive, the court will not address this argument.

Distributed Electronically to Registered Counsel of Record